## 8251

## STATE v. HERTZOG.

1. CONSTITUTIONAL LAW—MECHANIC'S LIEN—CONTRACTS—LABORERS.—
   Section 338 of the Criminal Code, giving subcontractors, laborers and material men a lien on the money received by the contractor for building and repairing houses, and making it a misdemeanor for the contractor not to pay these persons out of the money, is not violative of that provision of the State Constitution prohibiting imprisonment for debt nor of those provisions of the State and Federal Constitutions prohibiting unreasonable discriminations.

MR. CHIEF JUSTICE GARY, *with whom concurs* MR. JUSTICE WATTS, *thinks the second division of the section violates the provision as to imprisonment for debt, but that the first division is constitutional.*

MR. JUSTICE FRASER, JUDGE DEVORE *concurring, thinks it violates both constitutional provisions.*

2. MECHANIC'S LIEN—CONTRACTOR.—A contractor is not criminally liable under section 337 of the Criminal Code for failure to pay subcontractors, laborers and material men out of the money received by him on a building contract.

MR. CHIEF JUSTICE GARY *and* MR. JUSTICE WATTS *dissent.*

3. CONSTITUTIONAL LAW—STATUTES—APPEAL.—The point that section 338 of the Criminal Code as originally enacted in 1896 is unconstitutional in that the penal provision is not indicated in the title is not available here because not made on Circuit.

Before ROBERT ALDRICH, J., Marlboro. November, 1911. Modified.

Indictment against E. L. Hertzog and R. H. Rudisail. Defendants appeal on the following exceptions:

First. "Because the indictment contains three counts, two under the act of 1896, as amended by the act of 1897. And the third under the act making it a misdemeanor to dispose of property under a lien without the written consent of the lienee, and cannot be sustained as to the third count of the indictment for the reason that the special remedy provided by the acts of 1896 and 1897 is exclusive and must be pursued.

Second. "Because the indictment does not state facts sufficient to constitute an offense, as to the first and second counts, against the laws of South Carolina, in that the statute under which it is brought is in violation of article I, section 24, of the Constitution, which is as follows: 'No person shall be imprisoned for debt, except in cases of fraud,' in that the statute makes the mere failure of the contractor, erecting buildings, to pay laborers or persons furnishing materials received by him, a misdemeanor, without providing that the failure to pay must be fraudulent or

that there must be fraud on the part of the contractor in failing to do so. The statute punishes a person by imprisonment for failing to pay a debt.

Third. "In that the said statute is in violation of article I, section 5, of the Constitution of South Carolina, which is as follows: 'The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty or property, without due process of law, nor shall any person be denied the equal protection of the laws.'

A. "In that contractors, *building houses,* are only made indictable for failure to pay over to laborers and material men money received by them, while all other contractors are exempt from indictment.

B. "The statute does not give equal protection to other kinds of laborers than laborers on buildings, and to other material men than those furnishing materials for buildings.

C. "The statute discriminates in favor of laborers on buildings and persons furnishing materials for buildings and against all other kinds of laborers and material men.

D. "The statute does not give the equal protection of the law to a class similarly situated, because all laborers are to be classed together, and all material men are to be classified together. Whereas, in the statute only laborers on buildings and persons furnishing materials on same are entitled to be paid, else the contractor makes himself criminally liable.

E. "All contractors belong to a class similarly situated. But this statute discriminates against contractors erecting buildings, makes them liable to indictment for doing that which other contractors may do with impunity.

Fourth. "The statute is in conflict with the 14th amendment to the Constitution of the United States, in that it does not afford equal protection of the laws.

Fifth. "Because by the terms of the act the offense of breach of trust with fraudulent intent is not created, for the

reason that the lien is created on the property of the contractor, and not on that of the laborer or person furnishing materials, and there could be no breach of trust in the using of money, which is his own property, by the contractor."

*Messrs. Townsend & Rogers* and *Nichols & Nichols,* for appellants.

*Messrs. Townsend & Rogers* cite: *The second section violates article II, section 17, of Constitution:* 74 S. C. 448. *One section may be unconstitutional and the other enforced:* 63 S. C. 77. *The statute against selling property under lien is supported on the ground of fraud:* 64 S. C. 209; 36 S. C. 497; 32 S. C. 126. *The whole act violates section 24, article I, Constitution:* 79 S. C. 9. *The second section violates the State and Federal discriminatory constitutional provisions:* 79 S. C. 9.

*Solicitor J. Monroe Spears, D. D. McColl, Jr., J. W. LeGrand* and *J. K. Owens,* contra.

*Mr. McColl* cites: *Any violation of section 338, like that of 337, involves the element of fraud:* 68 S. C. 146; 64 S. C. 206; 36 S. C. 508. *This section does not violate section 24 of article I of Constitution:* 64 S. C. 207. *Nor does it violate the discriminatory provisions of the State and Federal Constitutions:* 63 S. C. 60, 425; 67 S. C. 35, 409, 481; 65 S. C. 459; 68 S. C. 140, 339; 69 S. C. 523; 73 S. C. 71, 140, 542, 550; 74 S. C. 207; 75 S. C. 62; 76 S. C. 278; 77 S. C. 165.

The case was argued during the November term, 1911, and during the April term, 1912, by order of the Court was reargued before the *Court en Banc.*

2—92

July 12, 1912. The opinion of the Court was delivered by

MR. JUSTICE WOODS.   This appeal is from an order of
the Court of General Sessions refusing to quash an indict-
ment against the defendant containing counts charging dis-
position by him of money subject to a statutory lien in
violation of sections 337 and 338 of the Criminal Code.
Section 337 is the familiar statute which in general terms
made a criminal offense the disposition of any personal
property upon which a lien exists without paying the lien
debt or depositing the amount of it with the clerk of the
Court.

The case turns mainly on the constitutionality of the
penal provisions of section 338, which reads as follows:
"It shall be the duty of any contractor or contractors, in
the erection, alteration or repairing of buildings in the
State of South Carolina, to pay all laborers, subcontractors
and material men for their lawful services and material
furnished out of the money received for the erection, altera-
tion or repairs of buildings upon which said laborers, sub-
contractors and material men are employed or interested,
and said laborers, as well as all subcontractors and persons
who shall furnish material for said building, shall have a
first lien on the money received by said contractor or con-
tractors for the erection, alteration or repair of said build-
ings in proportion to· the amount of their respective claims.
Nothing herein contained shall make the owner of the build-
ing responsible in any way: *Provided,* That nothing con-
tained in this section shall be construed to prevent any con-
tractor or contractors or subcontractors from borrowing
money on such contract.

"Any contractor or contractors or subcontractors who
shall for other purposes than paying the money loaned upon
said contract expend and on that account fail to pay to any
or all laborers, subcontractors and material men out of
the money received as provided in this section and as

admitted by such contractor or contractors, or as may be
adjudged by any Court of competent jurisdiction, shall be
deemed guilty of a misdemeanor, and upon conviction, when
the consideration for such work and material shall exceed
the value of one hundred dollars, shall be fined not less than
one hundred dollars nor more than five hundred dollars, or
imprisonment not less than three months nor more than
twelve months; and when such consideration shall not
exceed the value of one hundred dollars, shall be fined not
more than one hundred dollars or imprisoned not longer
than thirty days: *Provided,* Said contractor or contractors
or subcontractors may have the right of arbitration by
agreement with said laborers, subcontractors and material
men."

The specific charge against the defendant under this
section is that as a contractor for the alteration and repair
of certain buildings of W. S. Mowry he collected $1,723.12,
and expended it for other purposes than paying the money
loaned on the contract, and on that account failed to pay
R. J. Easterling Company for material furnished to the
amount of $606.62.

Defendant contends that the criminal enactment of sec-
tion 338 is unconstitutional, in that (1) it provides
imprisonment for debt without proof of fraud, and (2) it
arbitrarily discriminates against contractors for
buildings for creating a lien on money received by
them, in favor of subcontractors, laborers and
material men, and by making them criminally liable for
failure to apply the money received on their contracts to
the discharge of the lien, while no such burdens are imposed
on other contractors.

If the Court can discern in the statute any reasonable
meaning consistent with the Constitution, it must adopt that
as the true meaning in order to uphold the statute. Taking
the section in its entirety it cannot fairly be construed to
provide for imprisonment for the mere failure to pay a

debt. The first paragraph impresses on the money received by the contract a lien in favor of laborers, subcontractors and material men. The second paragraph enacts that if the contractor shall pay out the specific fund which has come into his hands and which must remain there subject to the lien, for other purposes than paying the money loaned on his contract, and on that account fail to pay laborers, subcontractors and material men out of the money so subject to their lien, then he shall be deemed guilty of a misdemeanor. This being so, the natural and indeed the only reasonable construction of the statute is that it makes penal not the mere failure to pay a debt, but the disposition by the contractor of a specific sum of money held by him under a lien so as to defeat the lien. Under this construction the statute does not violate the constitutional inhibition against imprisonment for debt except in cases of fraud. On this point the case falls entirely outside the principle on which *Ex parte Hollman,* 79 S. C. 9, 60 S. E. 19, 21 L. R. A. N. S. 242n, was decided, and within the rule laid down in *State v. Bardin,* 64 S. C., 207, 41 S. E. 959.

Unsound also is the objection that the statute violates the fourteenth amendment of the Constitution of the United States and section 5, aricle I, of the Constitution of this State. The rules with respect to the legislative power under the fourteenth amendment have been thus restated by the Supreme Court of the United States in the recent case of *Lindsley* v. *National Carbonic Gas Co.,* 220 U. S. 61, 55 L. Ed. 369: "1. The equal protection clause of the fourteenth amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.    4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

A like construction has been placed by this Court on section 5, article I, of the State Constitution, which on this point is like the fourteenth amendment of the Constitution of the United States. *Simmons* v. *Western Union Tel. Co.,* 63 S. C. 430, 41 S. E. 521, 57 L. R. A. 607; *Johnson* v. *Spartan Mills,* 68 S. C. 339, 47 S. E. 695. The classification here is far from being arbitrary. Contractors for the erection, alteration and repair of buildings in the main do work on a much smaller scale than contractors for railroads or streets or other works. Many, if not the majority, of the former are men of small means, and generally their laborers, subcontractors and material men must be paid, if paid at all, from the funds received on the contract. Without casting about for other reasonable grounds of classification, it is enough to say that the defendant has not discharged the burden which the law places on him of showing that the classification is altogether arbitrary.

The motion to quash the third count of the indictment framed under section 337 of the Criminal Code we think should have been granted. Section 337 contains the general law for punishment of the offense of disposing of personal property under liens. Section 338, enacted later, contains the special provisions on the same subject applicable only to liens in favor of certain persons on certain moneys in the hands of contractors for the erection, repair and. alteration of buildings. Construing the two statutes together it is manifest that section 338 must be regarded as taking the special liens and the disposition of money subject to them out of the general pro-

vision of law contained in section 337, and providing a
different and an exclusive punishment for the disposition
of money subject to such liens. It follows that for the
criminal disposition of money subject to the lien provided
for in section 338, a contractor can be indicted only under
that section.

The point that the statute now standing in the Criminal
Code as section 338 was not enacted as required by the Con-
stitution because the penal provision is a subject not
expressed in the title of the act as passed in 1896,
not having been made in the Circuit Court, is not
available to the defendant in this Court.

The judgment of the Circuit Court is modified according
to the views herein expressed.


MR. JUSTICE HYDRICK *and* MESSRS. CIRCUIT JUDGES
ERNEST GARY, GEO. E. PRINCE, GEO. W. GAGE, R. W.
MEMMINGER, JOHN S. WILSON, T. S. SEASE, FRANK B.
GARY *concur*.


MR. CHIEF JUSTICE GARY, *dissenting*. This is an
appeal from an order refusing to quash an indictment,
charging the defendant with a violation of sections 337 and
338 of the Criminal Code, which are as follows:

Section 337. "Any person or persons, who shall sell or
dispose of any personal property, on which any mortgage
or other lien exists, without the written consent of the mort-
gagee or lienee, or the owner or holder of such mortgage
or lien, and shall fail to pay the debt secured by the same,
within ten days after such sale or disposal, or shall fail in
such time, to deposit the amount of said debt, with the clerk
of the Court of Common Pleas for the county, in which the
mortgage or lien debtor resides, shall be deemed guilty of a
misdemeanor, and on conviction thereof, shall be impris-
oned, etc.

Section 338. "It shall be the duty of any contractor or contractors, in the erection, alteration or repairing of buildings in the State of South Carolina, to pay all laborers, subcontractors and material men, for their lawful services and material furnished, out of the money received for the erection, alterations or repairs of buildings, upon which said laborers, subcontractors and material men are employed or interested, and said laborers, as well as all subcontractors and persons who shall furnish material for said building, shall have a first lien on the money received by said contractor or contractors, for the erection, alteration or repair of said buildings, in proportion to the amount of their respective claims. Nothing herein contained, shall make the owner of the building responsible in any way: *Provided,* That nothing contained in this section, shall be construed to prevent any contractor or contractors or subcontractors, from borrowing money on such contract.

"Any contractor or contractors or subcontractors, who shall, for other purposes than paying the money loaned upon said contract, expend and on that account fail to pay to any or all laborers, subcontractors and material men, out of the money received as provided in this section, and as admitted by such contractor or contractors, or as may be adjudged by any Court of competent jurisdiction, shall be deemed guilty of a misdemeanor and upon conviction, when the consideration for such work and material shall exceed the value of one hundred dollars, shall be fined not less than one hundred dollars, nor more than five hundred dollars, or imprisonment not less than three months nor more than twelve months; and when such consideration shall not exceed the value of one hundred dollars, shall be fined not more than one hundred dollars, or imprisoned not longer than thirty days: *Provided,* Said contractor or contractors or subcontractors, may have the right of arbitration by agreement with said laborers, subcontractors and material men."

The appellant's exceptions will be reported.

The first question that will be considered is, whether laborers, subcontractors and material men have a lien under section 338, for services rendered and material furnished by them, on money received by the contractor, from those with whom he entered into the contract, to erect the buildings, etc.

The appellant's attorneys in their argument contend, that the act of 1896, whose provisions are incorporated in the Criminal Code as section 338, is unconstitutional, on the ground that it violates section 17, article III, of the Constitution, which provides that "every act or resolution having the force of law, shall relate to but one subject, and that shall be expressed in the title."

This question, however, is not properly before the Court for consideration, as it was not urged on Circuit, and there has been no ruling upon it.

As the statute, in express terms, gives a lien to laborers, subcontractors and material men, it must be held that they have such right, unless it is obnoxious to some other provision of the Constitution.

And, it is next contended, that it is repugnant to section 24, article I, of the Constitution, which provides that "no person shall be imprisoned for debt, except in cases of fraud."

The title of the act of 1896 is, "An act to require contractors, in the erection, alteration or repairing of buildings to pay laborers, subcontractors and material men, for their services and material furnished."

Our construction of that act is, that section 1 thereof, was intended to provide a civil remedy, to protect the rights of laborers, subcontractors and material men. It creates a lien in their favor on money received by the contractor, for the erection, alteration or repairing of buildings, and, likewise makes it the duty of the contractor to pay them, for their services and the material furnished, out of the money

received by the contractor. Section 2 was intended to punish the contractor criminally, for failing to pay the laborers, subcontractors and material men, out of the money received by him, for the erection, alteration or repairing of buildings. The act was not intended to punish him for disposing of property under lien. The title of the act and the language of section 2 show, that it was not intended to provide a punishment for disposing of property under lien (as the word "lien" is not mentioned in either of them), but for failure to pay the amount due the laborers, subcontractors and material men.

Section 2 of the act of 1896 is therefore repugnant to section 24, article I, of the Constitution. *Ex parte Hollman,* 79 S. C. 9, 60 S. E. 19, 21 L. R. A. N. S. 242n; *Bailey* v. *Alabama,* 31 Sup. Ct. Rep. 145.

The next question to be determined is, whether the first and second sections of the act of 1896, are so interdependent that one cannot operate without the other.

The rule is thus stated in Cooley's Con. Lim., page 209: "If when the unconstitutional portion is striken out, that which remains is complete in itself, and capable of being executed, in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. * * *

"If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect, complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object, without the aid of the invalid portion. And, if they are so mutually connected with and dependent upon each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and, if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all

the provisions which are thus dependent, conditional or connected, must fall with them." See also *Gilreath* v. *Greenville,* 63 S. C. 75, 40 S. E. 1028.

Section 1 of the act of 1896 was intended to create a civil remedy, while section 2 had in contemplation a criminal proceeding, for the punishment of a contractor, who failed to pay the parties therein mentioned, out of the money received by him. The two remedies are, in every respect, separate and distinct, and there is no reasonable ground for supposing, that the legislature would not have enacted section 1, if it had known that section 2 could not be carried into effect.

The appellant's attorneys recognize this principle, for, in their argument they say: "We do not contend, that the first section is unconstitutional, for the reason that the power of the legislature to create liens by statute, cannot be denied; but we contend that the second section is unconstitutional."

The next question for consideration is, whether the statute is in violation of section 5, article I, of the Constitution, which is as follows:

"The privileges and immunities of citizens of this State, and of the United States under this Constitution, shall not be abridged, nor shall any person be deprived of life, liberty or property, without due process of law, nor shall any person be denied the equal protection of the laws."

The principle is thus stated in the case of *Simmons* v. *Tel. Co.,* 63 S. C. 425, 41 S. E. 521, 57 L. R. A. 607: "Legislation is not unequal nor discriminatory, in the sense of the equality clause of the Constitution, merely because it is special or limited to a particular class. The decisions of the United States Supreme Court establish that the legislature has power to make a classification of persons or property, for public purposes, provided such classification is not arbitrary and bears reasonable relation to the purpose to be effectuated, and that the equality clause is not violated, when all within the designated class are treated alike."

The case of *Gulf C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, decides that the classification must not be arbitrary—that is, "must always rest upon some difference, which bears a reasonable and just relation to the act in respect to which, the classification is proposed," also that such classification must be "based upon some reasonable ground, some difference which bears a just and proper relation, to the attempted classification, and is not a merely arbitrary selection." This language is quoted with approval in *Porter* v. *Ry.,* 63 S. C. 169, S. E. 108; *Simmons* v. *Tel. Co.,* 63 S. C. 425, 41 S. E. 521, 51 L. R. A. 607, and *Oil Co.* v. *Spartanburg,* 66 S. C. 37, 44 S. E. 781.

These authorities are conclusive of this question, and show that the classification is not obnoxious to section 5, article I, of the Constitution.

The appellant also contended that the act of 1896 was inimical to the fourteenth amendment of the United States Constitution, which provides that no State shall deny to any person within its jurisdiction, the equal protection of the laws.

What has just been said, disposes of this question.

Construing the valid portion of section 338 with section 337 of the Criminal Code, it will be seen that section 338 creates a lien on money received by contractors in the manner therein mentioned, and that section 337 is applicable to such a lien.

Section 337 was construed by the Court in the case of *State* v. *Barden,* 64 S. C. 206, 41 S. E. 959, and it was held that it was not in conflict with section 5, article I, of the Constitution.

The defendants cannot be tried, under that count of the indictment charging a violation of section 338 of the Criminal Code, but can be tried under section 337 for unlawfully disposing of the money covered by the lien described in section 338 of the Criminal Code.

For these reasons I dissent.

MR. JUSTICE WATTS *concurs.*

MR. JUSTICE FRASER, *dissenting.* I do not see my way clear to concur in either of the opinions which have been prepared in this case. It would be a needless waste of time and space to again copy the statutes. I know the Supreme Court in *State* v. *Bordin,* 64 S. C. 207, 41 S. E. 959, held that section 337 is constitutional, but be it remembered that we are now in the *Court en Banc,* the great Constitutional Court of this State, and if the *Court en Banc* is bound by any other decision, it certainly is bound by its own decision. *Ex parte Hollman,* 79 S. C. 13, 60 S. E. 19, 21 L. R. A. N. S. 242n. "We shall not discuss at length the doctrine of *stare decisis.* It seems obvious it has less force when the constitutional rights of the citizen to his personal liberty is involved, than in those cases involving the fixedness of property rights and the regularity of procedure. With the profoundest respect for the Judges who delivered and concurred in these opinions, we cannot avoid the conclusion that the statute in question provides for imprisonment for debt without proof of fraud, and, therefore, attempts to deprive the citizen of one of the personal rights guaranteed by the Constitution of the State."

It seems to me we are bound to follow the Hollman case and not the Bordin case, which, in my judgment, is overruled by the Hollman case. In my opinion the cases are hopelessly in conflict and the decision of the *Court en Banc* must govern. In the Hollman case, at page 16, this Court says: "The legislative power to make acts criminal and punishable by imprisonment cannot be extended to an invasion of the rights guaranteed the citizen by the Constitution. It is impossible to frame a valid statute punishing by imprisonment the exercise of the right to religious liberty, or the right to petition for the redress of grievances, or the right to be exempt from imprisonment for debt

except in a case of fraud. These are all constitutional rights which cannot be abridged under the guise of legislation against crime. The exercise of them cannot be crime."

The province of this Court is to decide principles rather than cases. The principle decided in the Hollman case is that imprisonment for nonpayment of debts is allowed only in cases of *fraud*. In the Reeder case the Court held that motive or intent is immaterial. No other construction is possible. Intent is not in the statute and no Court is justified in supplying it.

Section 337, in short, provides, that if any one (with knowledge of the existence of the lien) shall sell any personal property, without the written consent of the lienee, and shall fail to pay the debt within ten days (deposit is equivalent to payment) he shall be guilty of a misdemeanor and be fined or imprisoned, or both.

The statute in the Hollman case provided for a wilful default without just excuse and yet the statute was declared to be unconstitutional because wilfulness and inexcusable conduct did not necessarily mean fraudulent conduct. Section 337 contains no such modifying words. Let me illustrate. A mortgagor has in his possession personal property worth one thousand dollars, covered by a mortgage for seven hundred dollars. By the act of God two-thirds of it is destroyed. The mortgagor finds a purchaser for the remnant at a price far beyond its market value. He is offered six hundred dollars for the remnant, today. He cannot raise the other hundred dollars. What shall he do? Shall he sell and save the mortgagee as much as possible, and take the imprisonment and the inheritable shame of a convict to himself and family, or shall he refuse and save himself at the expense of his creditor?

He meets the mortgagee and tells him the condition of affairs. The mortgagee verbally urges the sale, not merely consents. The sale is made. The entire purchase price is delivered to the mortgagee. The mortgagor not being able

to pay the balance of the mortgage debt, within ten days, is under this statute liable to imprisonment. Why is he imprisoned? I know of no other answer than that he did not pay the other hundred dollars, i. e. the debt. There certainly is no fraud here. Imprisonment for failure to pay a debt in the absence of fraud is declared in the Hollman case to be unconstitutional and beyond legislative power. For these reasons I am unable to concur in the opinion which sustains section 337..

Section 338, in my judgment, is even worse. This section gives a lien on the money received by contractors for the erection, alteration or repair of buildings in favor of laborers, subcontractors and material men who have taken part in the construction, etc., of buildings. Why not bridges, roads, factories, etc.? Is not the finished product just as much the result of their labor, attention and material in the one case as the other? But it is said that there would be too many involved in one case and only a few in the other. I do not think the classification is based on fact. It seems to me that it depends on the size of the bridge and the size of the house. I have seen the statement in an industrial paper that a skyscraper is a bridge on end. It seems to me that there are many kinds of workmen required for the perpendicular bridge, that have no necessary place in the horizontal bridge. For instance, stonemasons, brickmasons, electricians, plumbers, decorators, painters, etc., and yet if the bridge be perpendicular there is a lien, but if the bridge be horizontal, there is none.

I fail to see the reasonableness of the classification. But even if the one is complex and the other simple, it is new doctrine to me that the law can deal only with simple questions.

Again it is said that the true basis of criminality is that the law makes the contract price a trust fund, and when the contractor does not pay the lien debt, he has committed a breach of trust. If that be granted, it still would not

sustain the statute because a breach of trust to be criminal *must* be *with fraudulent intent*. Neither fraud nor anything that imports fraud is contained in this statute. Indeed the whole intent of the statute, as I see it, is to procure imprisonment for failure to pay the debts without the necessity to prove fraud. While the statute opens wide the door for fraud, it has only bonds and imprisonment for an honest but unfortunate contractor.

Again let me illustrate my view. A. contracts to build a house. Those with whom he has contracted for his supplies have failed. The price of supplies has risen and so has labor. The contract price is ten thousand dollars. It has cost A. eleven thousand dollars to build and he has no other money with which to pay the debts. Under section 337 we have seen that debt means all that is due, every cent. A. has collected five thousand dollars on his contract and paid it every cent to the laborers, subcontractors and material men. What is A. to do? If he collects the remaining five thousand dollars and prorates that among the three classes, he is to be fined or imprisoned for the failure to pay these debts in full. If A. still had the ten thousand dollars of course he could pay the six thousand dollars. The excuse that he has paid the first five thousand dollars to these very people does not avail. The statute allows one and only one excuse. A. can borrow money on the contract and repay that, but there is no other excuse allowed. If A. is dishonest his way is clear. He borrows on his contract, puts the money in his pocket and goes unwhipped of the law. The honest man who simply miscalculates or is unfortunate is imprisoned for nonpayment of his debt, while the real criminal is unpunished.

With all of its harshness, section 337 does provide that its provisions shall not apply to those who have no knowledge or notice of the lien. Not so with section 338. No knowledge or notice is necessary. Where a contractor has several contracts in different cities or widely separated

places, he must have a foreman on each contract, authorized to contract bills in emergencies. To a knowledge of each of these bills the contractor is held by a criminal liability. More marvelous still, the contractor is charged with prophetic knowledge of the future determination of Courts and juries. These, too, he must pay or be imprisoned. Hollman, 79 S. C. 15, 60 S. E. 19, 21 L. R. A. N. S. 242n. "However completely he may show his good faith, and however fully the Court and jury may be convinced of his good faith, conviction must follow unless the jury think he had just cause to abandon the contract or that the service required was not reasonable."

Under section 338 the contractor is denied the mercy or justice of the jury. His condemnation is sure, absolute, and unescapable. It makes no difference what the Court and jury may think. They do not have to think at all. The questions for them are, did the prisoner get money on the contract? Did he pay all the debts? If he did not pay all the debts, was he prevented solely because he paid it on a loan on the contract? (It makes no difference for what purpose the money was borrowed or what he did with the proceeds of the loan.)

It seems to me that the statute allows the contractor to divest the vested lien of the three classes. It violates the equal protection of the laws and provides imprisonment for the nonpayment of debts.

For these reasons I cannot concur in any opinion which sustains the conviction of the defendants.

CIRCUIT JUDGE J. W. DEVORE *concurs for the reason, that sections 337 and 338, of Criminal Code, are unconstitutional, in that they authorize imprisonment for debt, even if there be no fraud involved in the act or acts condemned, by said two sections, and made misdemeanors.*